(41 App. Div. 84.)

### FOWLER v. BUFFALO FURNACE CO.

(Supreme Court, Appellate Division, Fourth Department. May 24, 1899.)

1. MASTER AND SERVANT—INJURIES TO SERVANT—DEFECTIVE APPLIANCES.

    Molten refuse was removed from a blast furnace by pushing a kettle into the furnace, and, after it was filled, pulling it away with an engine, and unloading it by releasing a lever, thereby causing the kettle to tip. Plaintiff's intestate was employed to accompany the kettle to the place of unloading, unlatch the lever, and permit it to unload. After having unloaded one load, and while the second was being moved by the engine to

be unloaded, it emptied its contents, which flowed back on the. track, burning intestate, who was.riding on the front of engine. On prior occasions the lever had accidentally come out of place, and caused the kettle to dump, and when decedent was employed he was shown how to latch the lever, and told of the importance of doing it with care, but nothing was said to him about its having previously accidentally unloaded. There was no evidence that decedent had properly placed the lever and latch, but, after receiving its load, the kettle had been moved for a distance of 20 rods, and it would dump as soon as the lever got out of place. *Held* to warrant a finding that the kettle was in an unsafe condition, 'known to the owner of the furnace, and that the latter was negligent in not informing decedent of such condition.

2. SAME—CONTRIBUTORY NEGLIGENCE—EVIDENCE.

It warranted a finding that the accident was caused by the defective condition of the kettle, and not through decedent's failure to properly latch the lever.

3. DEATH BY WRONGFUL ACT—DAMAGES—EVIDENCE.

In an.action for death by wrongful act, evidence of the financial circumstances of the next of kin of deceased is admissible on the question of damages.

Appeal from trial term, Erie county.

Action by Bertia V. Fowler, as administratrix of Bertrand L. Fowler, deceased, against the Buffalo Furnace Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, and SPRING, JJ.

Adolph Rebadow, for appellant.
Edward R. O'Malley, for respondent.

McLENNAN, J.  The action was commenced on the 4th day of October, 1897, by the plaintiff, as administratrix, etc., of Bertrand L. Fowler, deceased, to recover on behalf of the heirs and next of kin the damages which were sustained by the death of the deceased, which occurred on the night of the 14th day of August, 1897, and is alleged to have been caused through the negligence of the defendant. The defendant is a domestic corporation, and at the time of the accident was engaged in operating an extensive blast furnace in the city of Buffalo, N. Y.  In such operation it was necessary at frequent intervals during the night and day to remove the molten slag or refuse from the furnace or pit to the dump, which was located a considerable distance from the furnace and other buildings of the defendant. This was accomplished by means of a large tank or kettle, which, when full of molten refuse, would weigh about eight tons, and was upon a car constructed for that purpose.  It was moved or operated by means of an engine connected with it by a long iron bar, by which it was pushed along a railroad track which extended into the furnace pit. When it had received its load of molten refuse, the engine was reversed, and the loaded car was pulled out of the furnace building, and up a considerable grade, a distance of about 20 rods, where there was a switch or siding, and the car was then pushed up this siding to the dump, where, by means of removing a latch, and thus moving a lever, the car dumped or unloaded.  The latch and the method of holding the lever in place, and also of releasing the lever when it is

desired to dump the car, are fully shown by the photographs in evidence, Exhibits A, 3, and 4. The "kettle," so called, was a patented machine, and was constructed expressly for the work in question. Such machines are used in connection with the principal blast furnaces of the country. The deceased was employed by the defendant to operate the kettle, and had been so employed by the defendant for three days prior to the accident. His duty was to put the lever in place, and latch it, to throw the switch so that the car could take the track leading to the dump, and when the car arrived at the dump it was his duty to unlatch the lever so that its load could be discharged. On the night of the 14th day of August, 1897, and about midnight, the decedent had thrown the switch. The engineer pushed the kettle car into the furnace pit. It received its load. The engine backed out, drawing the car, with its contents, to the switch, about 20 rods distant. The decedent threw the switch, and the engine was pushing the car up the dump track to empty it. This was the second trip the decedent had made during that night. As they were proceeding up the hill, the decedent was riding on the front of the engine, on the bumper beam, and when about half way up the hill the kettle car dumped its contents of molten refuse upon the track, which flowed back to where the decedent was, and burned him so badly that he lived but a few hours. The engine upon which he was riding was also considerably burned. The night of the accident was the first night that the decedent had worked for the defendant in charge of the kettle car, and, as before said, he had only been engaged in the performance of that duty for two or three days prior to the accident. The plaintiff seeks to recover upon the ground that the defendant was negligent, in that the kettle was not reasonably safe, and that such defects could not have been discovered by the decedent in the exercise of ordinary care and prudence on his part, and that such defects, although known to the defendant, or in the exercise of reasonable care and prudence should have been known by it, were not pointed out or told to the decedent.

An examination of the photographs and of the evidence relating to the construction of the kettle clearly shows that while the lever is in place it is impossible for the car to dump. It is also demonstrated that so long as the latch is in its place the lever cannot get out of place. The claim of the plaintiff is, and the evidence tends to show, that on many occasions prior to the accident the lever did accidentally come out of place, and cause the car to dump, against the will of those in charge of it; and there is evidence tending to show, and such as would justify the jury in concluding, that the lever so came out of the notch after it had been properly placed and properly latched, employing all the means for that purpose which are provided by the defendant. The evidence tends to show, and is uncontradicted, that when the decedent was set to work to manage the car in question he was instructed how to place the lever and to latch the same; that he was told of the importance of doing that work in accordance with the instructions given. He was not told, however, that the car on any previous occasion had ever dumped when the lever had been properly placed and latched. This information, under the circumstances, it

was clearly the duty of the defendant to have given to the decedent. The defendant owed the duty to the decedent either to have had such an appliance as would hold the lever of the car, and prevent it from dumping when properly operated, or it should have informed the decedent that the appliance, when properly used, would not at all times and under all conditions perform the work intended, but that, on the contrary, upon many occasions, when the lever had been properly set and properly latched, the car had dumped. The defendant, however, contends that there is no evidence in the case tending to show that the decedent put the lever of the car in its place, and latched it properly, before it was sent into the furnace pit to receive its load of molten slag. It is true that there is no direct evidence as to what the decedent did in that regard, but the fact that the lever remained in place while the car was being drawn a distance of 20 rods, up a grade, and over a rough track, to the switch, was then backed onto the switch, and was pushed for a distance up the hill on the track leading to the dump, furnishes some evidence from which the jury were warranted in saying that when the car was pushed into the pit the lever was properly put in place and was properly latched, because it is evident that the very moment the latch is taken off the lever it must dump instantly when pressure is put against the car. Upon all the evidence the jury were justified in concluding that the machine, or "kettle car," so called, was in an unsafe and defective condition, to wit, that it was in such condition that the latch was liable at any time to release the lever, and cause the car to be accidentally dumped with its load of molten slag; that the defendant knew of its defective condition, or in the exercise of reasonable care and prudence ought to have known it, and that the defendant failed in the discharge of the duty which it owed to the decedent in not informing him of such condition; and that the jury were also justified in concluding, upon all the evidence, that the accident was caused by reason of this defective condition, and not because the decedent had failed to properly latch the lever, or failed in the discharge of his duty in any other respect.

The learned trial justice, in his charge to the jury, very clearly and distinctly stated the issue presented by the evidence as to the negligence of the defendant, and also as to the alleged contributory negligence of the decedent. The learned court says:

"It is claimed that the defendant had knowledge that these cars had, on other occasions, dumped while going up this grade, and that on one occasion, something like a year before this accident, I think, and after one or two of these kettles had dumped on the grade, the defendant, for the purpose of making them more secure, placed an additional weight upon these latches to hold them down; and it is claimed on the part of the plaintiff that the defendant at that time had its attention drawn to the danger of these latches being jarred out of place, and these levers being jarred out of place, and of this kettle dumping at a place other than that at which it was contemplated to dump it, and under circumstances which might injure the employés of the defendant; and it is claimed that the defendant did not perform its duty to its employés of properly repairing those cinder cars; that the defendant did not exercise care and caution at that time, on discovering the dangers that were liable to be encountered, in providing against a recurrence of such events. This is the negligence with which the plaintiff charges the defendant, and that is the question that is submitted to you for determination,—whether or not this defendant did perform its duty of exercising reasonable care in inspecting this machinery and

these appliances, and in making such repairs from time to time as by this reasonable inspection were determined or would have been determined necessary for the purpose of insuring, as far as by the exercise of reasonable care the defendant could insure, the safety of its employés."

The question of the contributory negligence of the decedent was also properly submitted to the jury.

The only exception which requires consideration is the one to the admission of evidence as to the plaintiff's financial circumstances, and also to the refusal by the court to charge, as requested by defendant's counsel, that "the jury disregard the evidence showing the financial circumstances of the mother." We think the evidence was competent for the purpose for which it was received, as stated by the learned trial justice.

In the case of Erwin v. Steamboat Co., 23 Hun, 577. the court says:

"They [the jury] had the right to take into consideration the condition of the mother [who was the plaintiff in that case], the care and attendance necessary for her comfort and happiness, and the probabilities that she would have continued dependent upon the deceased for them, as well as for her maintenance."

In the case of Waldele v. Railroad Co., 29 Hun, 35, the court says:

"Proof of the plaintiff's present pecuniary circumstances, she being the mother of the deceased, was proper for the consideration of the jury in determining the amount of her pecuniary damage."

In the case of Lockwood v. Railroad Co., 98 N. Y. 526, the court says:

"In but few cases arising under this act is the plaintiff able to show direct, specific pecuniary loss suffered by the next of kin from the death, and generally the basis for the allowance of damages has to be found in proof of the character, qualities, capacity, and condition of the deceased, and in the age, sex, circumstances, and condition of the next of kin."

In the case of Birkett v. Ice Co., 110 N. Y. 508, 18 N. E. 110, the court says:

"Here there was proof of the circumstances of the plaintiff and his family, and of the condition, character, and sex of child; and the authorities in this state would not justify the ruling that nominal damages only could be recovered."

It follows that the judgment and order appealed from should be affirmed, with costs.

Judgment and order appealed from affirmed, with costs. All concur.